UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR J. GATES,

                Petitioner,                Case Number 2:09-CV-13864
                                                                             Honorable Lawrence P. Zatkoff

v.

BLAINE LAFLER,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Omar J. Gates' petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner is serving a controlling sentence of 22½-to-45 years as well as lesser terms for his Washtenaw Circuit Court convictions for assault with intent to commit murder, MICH. COMP. LAWS 750.83, assault with intent to do great bodily harm, MICH. COMP. LAWS 750.84, wearing body armor, MICH. COMP. LAWS 750.227f, carrying a concealed weapon, MICH. COMP. LAWS 750.227, and commission of a felony with a firearm. MICH. COMP. LAWS 750.227b. For the reasons that follow, the Court denies the petition and denies a certificate of appealability.

### I. Facts and Procedural History

Armed with two handguns and wearing body armor, Petitioner shot one police officer and shot at another. After a struggle with the officers, Petitioner was subdued and arrested at the scene. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

        Defendant's convictions arise from an altercation with Washtenaw County Sheriff's deputies Benjamin Knickerbocker and Keith Dalton, which occurred in the

early morning hours of December 10, 2001. Officers Knickerbocker and Dalton were dispatched to investigate a malicious destruction of property call at an apartment complex in Ypsilanti. While there, they observed defendant acting suspiciously and followed him. When defendant began climbing a fence, Knickerbocker ordered him down and asked to speak with him. Defendant then began to run. He ignored orders to stop, and Knickerbocker tackled him. As he tackled defendant, Knickerbocker observed a semiautomatic handgun "fly out" from defendant's waistband. Subsequently, as Knickerbocker and defendant were spinning to the ground, defendant shot Knickerbocker in the left thigh with a second gun. More shots followed during the continuing struggle, and Knickerbocker suffered additional injuries to his right heel and left wrist. As Knickerbocker attempted to obtain control of defendant's gun, defendant fired two or three shots at Knickerbocker's head. He also fired several shots at Dalton, who had emerged from behind a car. Defendant fired continuously until his gun jammed, at which point Dalton handcuffed him.

Defendant testified that he and his girlfriend were driving home from a bar when they began arguing and defendant got out of the car. Defendant indicated that he drank alcohol, took ecstasy, and smoked marijuana earlier that night. Moreover, a few months earlier, his best friend was killed and his own life was threatened. After that time, defendant feared for his life, and on the night in question, he was wearing a bulletproof vest and was carrying two guns. The guns were loaded and ready to fire in the event that defendant needed to use them for protection. Defendant testified that he was walking to a friend's house when he saw Officers Knickerbocker and Dalton. He tried to avoid the officers because he was armed and wearing a bulletproof vest. He "knew [he] was dirty." Defendant ran around a couple of buildings and tried to climb the fence. When he could not get over the fence, he jumped down and tried to run away from the officers. Defendant claimed that, before Knickerbocker reached him, he threw one of his guns to the ground behind him. Defendant then tried to throw the other one away, but Knickerbocker tackled him, causing the gun to fire. Defendant claimed that Knickerbocker grabbed the gun and more shots were fired. Defendant denied intentionally shooting at either Knickerbocker or Dalton. Instead, he claimed that the gun had a very light trigger pull and simply went off during the struggle with Knickerbocker.

Defendant was charged with two counts of assault with intent to commit murder, two counts of felony-firearm, two counts of carrying a concealed weapon and two counts of wearing body armor during the commission of a violent crime. Defendant conceded his guilt to the weapons and body armor charges during closing argument. In addition to those charges, the jury was instructed on assault with intent to commit murder and the lesser included offense of assault with intent to commit great bodily harm. The trial court declined to instruct on felonious assault or reckless discharge of a firearm, concluding that those offenses were not necessarily included lesser offenses. The jury found defendant guilty of one count of assault

with intent to murder and one count of assault with intent to commit great bodily harm, along with the weapons and body armor charges.

*People v. Gates*, 2006 Mich. App. LEXIS 2153 (Mich. Ct. App. July 13, 2006).

Petitioner appealed his conviction to the Michigan Court of Appeals. Petitioner's appellate counsel raised the following claims:

> I. Appellant was sentenced contrary to his Sixth and Fourteenth Amendment rights under the United States Constitution to have a jury determine beyond a reasonable doubt all facts considered for sentencing.
>
> II. The trial court erred in failing to give proper and timely requests by the defendant for instructions on lesser included offenses of felonious assault and reckless discharge of a firearm.

Petitioner also filed a supplemental pro-se brief that raised the following additional claims:

> I. Defendant-Appellant Gates was denied his fundamentally protected federal and State constitutional right to due process and a fair and impartial trial under U.S.C.A Const, Ams V, VI, XIV; M.C.L.A Const 1963, art I, §§ 17, 20, where the prosecutor willfully and wantonly suppressed and failed to disclose exculpatory evidence to the defense bearing upon the reliability of the prosecution's two key witnesses.
>
> II. Defendant-Appellate Gates is entitled to a new trial since he was deprived of his fundamentally protected federal and State Sixth Amendment right to the "effective" assistance of counsel, where despite Petitioner's repeated insistence, trial counsel failed to compel the prosecution for full discovery disclosure of favorable exculpatory evidence bearing upon the credibility of the prosecution's two key witnesses.
>
> III. Defendant-Appellate Gates was denied his fundamentally protected federal and State right to due process and a fair trial under U.S.C.A Const, Ams V, VI, XIV; M.C.L.A Const 1963, art I, §§ 17, 20, where the prosecutor again and again failed to abide by the reciprocal prerequisites by ignoring defense counsel's request for full disclosure of critical forensic crime discovery evidence set forth under MCR 6.201(A) and (B).
>
> IV. Defendant-Appellate Gates is entitled to a new trial since being deprived of his federal and State Sixth Amendment right to the "effective" assistance of counsel on direct appeal, where appellate counsel failed to raise significant and obvious core issues and instead raised inferior appellate issues which were patently without merit, thereby violating Mr. Gates' vested constitutional due process rights guaranteed

under U.S.C.A Const, Ams V, VI, XIV; M.C.L.A Const 1963, art I, §§ 17, 20.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Id.* Petitioner subsequently filed an application for leave to appeal to the Michigan Supreme Court, which raised the same claims, plus one additional issue that was not presented in the Court of Appeals:

> I. There was insufficient evidence to convict defendant of assault with intent to commit murder which violates his constitutional right to have a rational trier of fact find that all elements were proven beyond a reasonable doubt which violates defendant's fourteenth Amendment right of due process.

The state supreme court denied leave to appeal. *People v. Gates*, 477 Mich. 978, 725 N.W.2d 52 (2006).

Petitioner then filed a motion for relief from judgment in the trial court, raising the following claims:

> I. Defendant was denied due process under the Fourteenth Amendment where he was assessed (15) points under MCL 777.49 (OV19), which statute Defendant submits is unconstitutionally void for vagueness on its face as it appeals to defendant.
>
> II. Defendant was denied due process of law where the sentencing and information report was based upon inaccurate information, where in ruling on Defendant's motion for relief from judgment, the trial court found that Defendant had only 100 points. Defendant is entitled to resentencing where the sentencing information report scored Defendant as having 110 points, and where if the sentencing and information report was accurate it would cause a change in Defendant's minimum sentence.
>
> III. Appellate counsel was ineffective for failing to raise on direct appeal that OV 19 is unconstitutional, and for failing to raise the issue that the sentencing and information report was based on inaccurate information, where the sentencing and information report scored Defendant as having 110 points when Defendant had only 100 points.

The trial court denied the motion in an opinion and order dated January 2, 2008. Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. The application

was denied "because defendant has failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Gates*, Mich. Ct. App. No. 287542 (November 6, 2008). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Rule 6.508(D). *People v. Gates*, 484 Mich. 864, 769 N.W.2d 677 (2009).

Petitioner's application for habeas relief raises the following claims:

I. Petitioner Gates was denied his fundamentally protected federal constitutional right to due process and a fair and impartial trial under Amendments V, VI, XIV of the United States Constitution, where the prosecutor willfully and wantonly suppressed and failed to disclose exculpatory evidence to the defense bearing upon the reliability of the prosecution's two key witnesses.

II. Petitioner Gates is entitled to a new trial since he was deprived of his fundamentally protected federal Sixth Amendment right to the effective assistance of counsel, where despite Petitioner's repeated insistence, trial counsel failed to compel the prosecution for full discovery disclosure of favorable exculpatory evidence bearing upon the credibility of the prosecution's key witnesses.

III. Petitioner Gates was denied his fundamentally protected federal right to due process and a fair trial under United States Constitution, Amendments V, VI, XIV, where the prosecutor again and again failed to abide by the reciprocal prerequisites by ignoring defense counsel's request for full disclosure of critical forensic crime discovery evidence.

IV. Petitioner was sentenced contrary to his Sixth and Fourteenth Amendment Rights under the United States Constitution to have a jury determine beyond a reasonable doubt all facts considered for sentencing.

V. Petitioner Gates was denied due process of law under the Fourteenth Amendment where he was accessed fifteen (15) points under MCL 777.49 (OV19), which statute Petitioner submits is unconstitutionally void for vagueness on its face as it appeals to him.

VI. Petitioner was denied due process of law where the sentencing and information report was based upon inaccurate information, where in ruling on Petitioner's motion for relief from judgment, the trial court found that Petitioner had only 100 points. Petitioner is entitled to resentencing where the sentencing information report scored Petitioner as having 110 points, and where if the sentencing and information report was accurate it would cause a change in Petitioner's minimum sentence.

VII. Appellate counsel was ineffective for failing to raise on direct appeal the unconstitutionality of MCL 777.49 (OV 19), and for failing to raise that the sentencing and information report was based on inaccurate information, where the sentencing and information report scored Petitioner as having 110 points when Petitioner had only 100 points.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for

evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)(*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, No. 2011 WL 148587, * 11 (U.S. 2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Even where a state court does not explain the rationale for its decision to reject a claim on the merits, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. 786.

### III. Analysis

### A. Destruction of Evidence

Petitioner first claims that the prosecutor failed to turn over to the defense bullet fragments which struck him and were removed at the hospital and information regarding the angle of entry of the bullets. Petitioner asserts that such evidence was relevant to his accidental discharge defense because the bullets were fired from his own weapon. Petitioner's third claim relatedly asserts that his right to present a defense was violated because he was unable to offer this evidence at trial.

The Michigan Court of Appeals denied this claim on the merits as follows:

> Defendant argues, in propria persona, that the prosecutor committed misconduct by suppressing exculpatory, forensic crime scene evidence that bore on the bias, credibility, and vindictiveness of Officers Knickerbocker and Dalton. We disagree.

> A prosecutor is required to disclose any exculpatory and material evidence in his possession. *People v. Stanaway*, 446 Mich. 643, 666 (1994). To establish a violation of the due process right to the disclosure of exculpatory information, defendant must show: (1) that the state possessed evidence favorable to him; (2) that he did not possess the evidence and could not have obtained it with reasonable diligence; (3) that the prosecutor willfully or inadvertently suppressed the evidence; and (4) that, if the evidence was disclosed, it is reasonably probable that the result of trial would have been different. *People v. Cox*, 268 Mich. App. 440, 448 (2005).
>
> Defendant specifically asserts that the prosecution withheld bullets or bullet fragments, or information relating to bullets or bullet fragments, which struck or were surgically removed from defendant. He argues that, if this evidence was provided to him, he likely could have shown that the bullets that struck him were from his own handgun and that he was shot in the left shoulder by Officer Knickerbocker with that handgun. This, in turn, would contradict Knickerbocker's trial testimony that defendant discharged his weapon at Knickerbocker's head. It would also seriously impeach the credibility of both officers. Defendant, however, fails to demonstrate that the prosecution possessed any bullets or bullet fragments, or information relating to bullets or bullet fragments that were surgically removed from defendant. The lower court record reflects that the prosecutor responded to all discovery requests by the defense. Testimony and documents at trial established that police gathered numerous cartridge casings at the scene of the shooting. Eleven of those casings were determined to have been fired from Officer Dalton's service weapon. Seven were determined to have been fired from defendant's gun. One cartridge casing was consistent with defendant's weapon but was not definitively from that weapon. Additionally, two bullets were recovered from defendant's bullet-proof vest, and both were fired from Dalton's gun. The record does not indicate that the prosecution ever had possession of any bullets or bullet fragments removed from defendant's person. Therefore, defendant has not met his burden of establishing that the prosecution possessed and withheld the claimed evidence from him. *See id*.
>
> We additionally note that due process does not require the police to seek and find exculpatory evidence. *People v. Coy*, 258 Mich. App. 1, 21 (2003). Moreover, with respect to evidence of unknown probative value, which is thus only potentially exculpatory, loss of the evidence denies due process only when the police act in bad faith. *Arizona v. Youngblood*, 488 U.S. 51 (1988); *People v. Hunter*, 201 Mich. App. 671, 677 (1993). In this case, there was no showing that the police acted at all, let alone in bad faith, with respect to any bullets removed from defendant's person at the hospital. Defendant's due process claims are meritless.

*Gates*, 2006 Mich. App. LEXIS 2153, *7-10.

This decision was not contrary to clearly established Supreme Court law, nor did it involve

-8-

an unreasonable application of law or facts. The Supreme Court explained in *Brady v. Maryland*, 373 U.S. 83 (1963), that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).

The bullets or fragments recovered from Petitioner were apparently never tested to determine which weapon fired them. Therefore, Petitioner has not satisfied the first element of a *Brady* claim — that the items were exculpatory or that they could have been used as impeachment evidence. He also has failed to show that he was prejudiced by the alleged suppression of evidence. If testing of the fragments revealed that Petitioner had been shot by Officer Dalton, his theory that he accidentally shot himself and Officer Knickerbooker during their struggle would have been less plausible. Indeed the two bullets that were recovered from Petitioner's body armor were found to have been shot from Officer Dalton's weapon, and there were eleven casings recovered from the scene that were fired from his weapon. The state court correctly concluded that Petitioner failed to satisfy all the elements of a *Brady* claim.

Petitioner faults the police and prosecution for failing to have the hospital preserve the fragments removed from Petitioner. But to prevail on a claim that the State failed to preserve evidence that could have been subjected to tests, which might have exonerated the defendant, a

defendant has to show that the prosecution acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). "When the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established." *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002).

The record does not suggest any bad faith on the part of the police or prosecution. Neither had any reason to suspect that Petitioner would claim that he accidentally shot himself multiple times. At most, the failure to recover the fragments appears to have been the result of negligence. Petitioner has failed to show that the police acted in bad faith. Therefore, his right to due process was not violated, and he is not entitled to habeas relief on the basis of his claim that the prosecutor suppressed, lost, or destroyed evidence favorable to the defense, or that his right to present a defense was thereby violated.

### B. Ineffective Assistance of Counsel

Petitioner's second claim asserts that his counsel was ineffective because he failed to compel the production of the bullets and bullet fragments recovered from his body.

The Michigan Court of Appeals denied this claim on the merits as follows:

> Defendant next argues, in propria persona, that he was deprived of the effective assistance of counsel both at trial and on appeal. Defendant asserts that his trial counsel was ineffective for failing to compel full disclosure of exculpatory evidence and that his appellate counsel was ineffective for failing to assert that the prosecution violated defendant's constitutional rights by failing to fully disclose exculpatory evidence to the defense. We disagree.
>
> To establish ineffective assistance of counsel, defendant must show that his attorney's representation fell below an objective standard of reasonableness under prevailing professional norms; that but for his counsel's errors, there is a reasonable probability that the results of his trial would have been different; and that the proceedings were fundamentally unfair or unreliable. *People v. Toma*, 462 Mich. 281, 302-303 (2000); *People v. Rodgers*, 248 Mich. App. 702, 714 (2001). To establish that his counsel's performance was deficient, "defendant must overcome the

>strong presumption that his counsel's action constituted sound trial strategy under the circumstances." *Toma, supra* at 302. Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. *People v. LeBlanc*, 465 Mich. 575, 578 (2002); *People v. Solmonson*, 261 Mich. App. 657, 663 (2004).
>
>Defendant asserts that his trial counsel was ineffective for failing to compel discovery of the evidence of bullets or bullet fragments removed during defendant's surgery. However, a review of the record reveals that each of defendant's trial attorneys requested appropriate discovery, including discovery of all exculpatory evidence, from the prosecutor and that the prosecutor responded to each request. Trial counsel is not required to advocate meritless positions. *People v. Mack*, 265 Mich. App. 122, 130 (2005). Therefore, we conclude that defendant's trial counsel was not ineffective for failing to compel discovery when discovery was sought, responses were received and the prosecutor assured trial counsel that all exculpatory evidence was disclosed.
>
>We also conclude that defendant's appellate counsel was not ineffective. To establish ineffective assistance on appeal, defendant must overcome the presumption that the decision regarding which claims to raise was sound strategy. *People v. Reed*, 198 Mich. App. 639, 646 (1993). Appellate counsel must be an active advocate for defendant, but he is not required to raise every possible argument urged by defendant for review regardless of merit. *People v. Pratt*, 254 Mich. App. 425, 430 (2002); *People v. Johnson*, 144 Mich. App. 125, 131 (1985). Appellate counsel's decision not to advance weaker arguments and instead to focus on those more likely to prevail is not evidence of ineffective assistance of counsel. *Pratt, supra*, quoting *People v. Reed*, 449 Mich. 375, 391 (1995) (Boyle, J.). We have already determined that the issues raised by defendant in propria persona lack merit. Thus, defendant cannot establish ineffective assistance premised on any decision by his appellate counsel not to raise those issues on appeal. Additionally, because defendant raised those issues himself, he cannot establish prejudice arising from his appellate counsel's alleged failure. *Id*.

*Gates*, 2006 Mich. App. LEXIS 2153, *10-13.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must

establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied

*Strickland's* deferential standard." *Id.* at 788.

The decision of the state appellate court did not involve an unreasonable application of this standard. As noted by the state court, each of Petitioner's trial attorrneys requested production of exculpatory evidence held by the prosecution, and the prosecutor responded to the requests. Apparently, the bullets and bullet fragments recovered from Petitioner at the hospital were already lost or destroyed. The state court reasonably found, based on the record presented to it, that counsel did not perform deficiently by failing to press a futile issue. Petitioner's appellate counsel was likewise not ineffective for failing to raise a meritless claim of ineffective assistance of trial counsel.

The Court notes that, even setting aside the state court's conclusion that Petitioner did not demonstrate deficient performance, Petitioner also cannot show prejudice. The evidence presented at trial quite convincingly showed that Petitioner attempted to shoot to death a police officer. Aside from the testimony of the officers who witnessed the struggle and shooting, there were seven bullet casings fired from Petitioner's gun found at the scene. He shot at both officers, and continued to do so until his second handgun jammed, and he was subdued by Officer Dalton. Accordingly, even if one or more bullet fragments recovered from Petitioner's body turned out to have been fired from his own gun while he wrestled with Officer Knickerbocker, there is not a reasonable probability that the result of the trial would have been more favorable to him.

Petitioner has not demonstrated entitlement to habeas relief based on this claim.

### C. Sentencing Claims

Petitioner's remaining claims challenge his sentence. In his fourth claim, Petitioner alleges that the trial court enhanced his sentence on the basis of facts which he did not admit and which were not proved to a jury beyond a reasonable doubt. This claim is based on *Apprendi v. New Jersey*,

530 U.S. 466 (2000), and on *Blakely v. Washington*, 542 U.S. 296 (2004). In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Supreme Court stated that the "statutory maximum" for purposes of *Apprendi* "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303 (emphasis omitted).

Both the Michigan Supreme Court and the Sixth Circuit have determined that *Blakely* does not apply to Michigan's indeterminate sentencing scheme. *See Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010); *People v. Drohan*, 475 Mich. 140 (2006). This Court is bound by the Sixth Circuit's decision in *Montes*. Petitioner therefore has no right to relief on the basis of his *Blakely/Apprendi* claim.

Petitioner's fifth claim asserts that the sentencing guidelines were incorrectly scored, and his sixth claim asserts that the trial court relied on inaccurate sentencing information. These claims were presented to the state courts in Petitioner's motion for relief from judgment. Respondent asserts that review is barred by Petitioner's procedural default.

The Michigan Court of Appeals and Michigan Supreme Court denied relief with respect to these claims by citing Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. See MICH. CT. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has recently held that the form order used by

the Michigan Supreme Court (as well as the Michigan Court of Appeals) to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained orders of the Michigan Supreme Court and the Michigan Court of Appeals to the state trial court's decision to determine the basis for the denial of state post-conviction relief. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

In this case, the state trial court denied relief on procedural grounds. The trial court denied relief because Petitioner failed to establish good cause and prejudice for his failure to raise the issues during his direct appeal under Rule 6.508(D)(3). Trial Court Opinion, at 8. A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, *supra*.

In this matter, Petitioner's seventh habeas claim asserts ineffective assistance of appellate counsel as cause to excuse the procedural default of his other claims, however, Petitioner has not shown that appellate counsel was ineffective. In order to establish ineffective assistance of appellate counsel, Petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington*, 466 U.S. 668, 690 (1984). Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally

competent assistance. Appellate counsel presented legitimate and viable issues in Petitioner's direct appeal. Petitioner has not shown that appellate counsel's strategy in presenting those claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable.

Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default, and, therefore, claims five, six and seven are barred from review.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is

**DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

 **IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

       S/Lawrence P. Zatkoff
       LAWRENCE P. ZATKOFF
       UNITED STATES DISTRICT JUDGE

Dated:  September 28, 2011

CERTIFICATE OF SERVICE

 The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 28, 2011.

       S/Marie E. Verlinde
       Case Manager
       (810) 984-3290